## JOHN A. KIRBY v. THE PHŒNIX INSURANCE COMPANY OF MEMPHIS, TENNESSEE.

1. FIRE INSURANCE. *Change of risk. Evidence. Custom.* In an action on a fire insurance policy issued while the premises were occupied providing that material changes of risk or ownership should be notified to the company, and assented to in writing, the house having burned while unoccupied, it was held not to be error for the court to allow the defendant to prove that there was a general custom of insurance companies doing business at the place where the property was situated, never to take a risk on vacant or unoccupied property.

2. CANCELLATION. A fire insurance policy may be cancelled independent of its stipulations by the mutual parol consent of the insured and insurer, although the unearned premiums are not refunded.

Kirby *v.* Insurance Company.

3. WAIVER. A stipulation in a fire insurance policy that in case of cancellation during the life of the policy by the insurer the unearned premium shall be refunded *pro rata* is for the benefit of the insured, and he may waive it.

## FROM SHELBY.

Appeal in error from the Circuit Court of Shelby county. J. O. PIERCE, J.

J. E. BIGELOW for Kirby.

U. W. MILLER for Insurance Company.

DEADERICK, C. J., delivered the opinion of the court.

This cause was before this court at its April term, 1882, upon appeal in error by plaintiff from a judgment of the circuit court of Shelby county. The judgment was reversed and the cause remanded for a new trial for error in the admission of the evidence of experts, "that it was a material change of risk for insured property to become vacant during the life of the policy," objections having been made to the testimony. This court holding that the expert testimony was not sufficient to establish, that it was a material change of risk, but that the case was susceptible of proof of facts making it so.

At September term, 1882, of the circuit court, verdict and judgment were again rendered against the plaintiff and he has appealed in error to this court.

The Referees have reported recommending a reversal of the judgment, and the defendant has excepted to the report. The exceptions open the case for the exam-

ination of the reasons leading the Referees to their conclusions.

The suit is founded upon the insurance by defendants of a house in Memphis, as the property of plaintiff. The policy is dated May 27, 1878, and expired May 27, 1879. The house was burned March 31, 1879. It was occupied at the time of insurance, as recited in the policy, by a good tenant, and was unoccupied at the time of its destruction, and had been for about two months.

Defendants insist it is not liable, because the house was allowed to become vacant during the life of the policy, and was destroyed while vacant, and because the policy was cancelled by the parties before the fire. The third clause of the policy provides that all material changes of risk. or ownership, shall be notified to the company and assented to in writing. The defendant was allowed, over the objection of the plaintiff, to prove that there was a general custom of insurance companies doing business in Memphis, never to take a risk on vacant and unoccupied property.

This, the Referees report, was in substance a repetition of the error, for which the judgment had been reversed by this court at a former term; that it was allowing the witness to testify in a different form of words; that it was the opinion of the experts that it was a material change of risk to allow insured property to become vacant. Although there is plausibility in the reasoning by which the proposition is maintained in the report, yet the cases are not identical. In the first case it was held that the mere opinion of the

expert witnesses, without facts to support it, was inadmissible. In the last the evidence goes to establish a fact as to the existence of a general custom of the insurance companies, not a mere naked opinion of experts or others.

And in the question of whether there is an increase of risk where a house was occupied when insured and afterwards became vacant, a general custom of insurance companies to charge a higher premium on unoccupied dwellings, is admissible: May on Insurance, page 720, sec. 582. And upon the same principle the general custom to refuse such risks, is admissible. These customs being facts tending to show increased risk.

But the question most earnestly argued before us is, was the policy cancelled, or rather was the charge of the court correct in respect to this question, and is there sufficient evidence in the record to sustain the verdict? The court charged the jury that the clause in the policy giving the defendants the right to cancel the policy by giving notice and paying back a *pro rata* portion of the premium for the unexpired time of the policy, could only be available to defendants by the payment or tender of the *pro rata* of the premium, and unless the defendants did pay or tender said sum it would not be a cancellation. The court further said: "But independent of this clause in the policy, it was competent for the parties to cancel this policy by mutual consent and agreement between them, and if the jury find from the evidence, that by agreement between the plaintiff and the secretary of defendants, the policy was in fact cancelled, the minds of

both parties then meeting in accord on the proposition to cancel it then and there, this was, in law, a cancellation of the policy at the time, and the policy was then at an end, and if this was done before the fire occurred, the plaintiff cannot now recover on the policy whether the unearned premium was paid to him or not." The court further charged, that: "The condition of the policy, that in case of cancellation by the act of defendants, the unearned premium must be paid to plaintiff, was a condition for plaintiff's benefit which he might waive. And if the jury find that before the fire occurred, the defendants undertook to exercise its right of cancellation under the clause in the policy, and did all that was necessary, except to pay the unearned premium, and the plaintiff, by his words or by his silence, when he should have spoken, waived such payment, or that he by his absence from Memphis, or otherwise actually prevented the payment, then such payment by defendants was excused and the cancellation was complete." But the court said: "No person can be held to have waived his rights unless he understands he is waiving them," etc.

On February 26, 1879, the plaintiff came into the office of defendant, and the secretary of the company told him that his house was vacant and asked him if he expected to get a tenant soon. Plaintiff replied he did not think he would, and did not know when he would get a tenant. The secretary then said the company was unwilling to carry risk on vacant and unoccupied property. Plaintiff replied: "Very well; cancel the policy," and left the office, as

witness supposed to get the policy, and never returned, having left the State the same day and not returning until after the fire. Another witness testified that the secretary asked plaintiff if he expected to get a tenant soon, to which plaintiff replied: "I don't think I will; I don't know when I will get a ·tenant." The secretary then said: "The company is unwilling to carry risks on vacant and unoccupied property." Plaintiff replied: "All right," or "very well; cancel the policy;" or, "consider it cancelled." Secretary said: "Bring in your policy and get your unearned premium," to which plaintiff replied: "All right," or "very well."

The plaintiff testified that the secretary said to him: "Your house is vacant; do you expect to get a tenant soon?" Witness replied he did not think he would. The secretary then said: "The company cannot carry risks on vacant property, and will have to cancel your policy." Witness replied: "All right," or "very well," and left, etc.

Plaintiff said he did not say "cancel the policy or consider it cancelled.". Plaintiff insists that the facts disclosed in the record do not sustain the finding of the jury, and that the judge's charge was incorrect in holding that the parties might, by mutual agreement, waive the payment of the unearned premium, and cancel the policy.

The case of *Hollingsworth* v. *Germania Insurance Co.*, 45 Ga., 294, reported in 12th American Reports, with other cases therein cited, is relied upon, as sustaining the view maintained by plaintiff. In that

case the insurance was effected in Rome, Georgia, on goods in Gadsden, Alabama. The company elected to cancel the policy and its agent notified the assured to forward the policy for cancellation to Rome, and he would refund the unearned premium. The policy was forwarded and received January 17th or 18th, with instructions to pay the unearned premium to the assured's agent in Rome. This was not done until February 27th next thereafter, and in the meantime the goods were burned, and the Insurance Company was held liable. The court held that the company had failed to comply with their contract to refund for more than a month, after plaintiff had done all that was required of him, and it was not pretended that they had tendered the money.

The defendants maintained that after the agreement to cancel, their liability ceased. But the court held it did not, until a tender was made. The proposition by the company was, that plaintiff should return the policy and then it would refund the money. But after the company received the policy they waited more than a month, and until after the loss, although unknown, before the money was paid. There was no impediment in the way of the payment when the policy was received. The agent of the assured was in Rome, ready to receive the money. The facts in that case do not raise any presumption that the parties intended or agreed to cancel the policy in any other way than that prescribed by its stipulations and provisions.

The case of *Van Valkenburgh* v. *Lenox Fire Insu-*

*rance Company,* 51 New York Rep., is similar in most respects to the case just cited. In both cases the rights of the parties depended upon whether the stipulations of the policies had been observed. The question of a parol rescission or cancellation did not arise. But such a contract may be cancelled by mutual agreement of the parties, independently of the stipulations of the policy itself, and whether there was a cancellation is a proper question for the determination of the jury, under the instructions of the court.

His Honor, the circuit judge, in this case, instructed the jury that the policy required the payment back of the unearned premium, before the company could insist that the policy was cancelled. But he also instructed them, if the parties so agreed, they might independently of the provisions of the policy for its cancellation, by mutual consent, cancel it, and waive the exact performance of the stipulations, which are required by the policy to be performed, before either party could insist as matter of legal right, that the policy was cancelled. And his Honor left it to the jury, under clear and explicit instructions, to say whether the parties had agreed to consider the policy cancelled, and had waived the immediate payment of unearned premium on the one hand and surrender of the policy on the other, as conditions precedent to the cancellation. The jury have responded to this issue in favor of the theory of the defendant, and we are of opinion that there is sufficient evidence in the record to sustain their finding.

Furthermore, we see no reason why the party,

whether plaintiff or defendant, may not waive a right secured to him and for his own benefit. In issuing the policy, which requires prepayment of the premium in order to its validity, the company may raise the prepayment as a condition precedent. And it has been held that the delivery of the policy, without exacting payment, raises the presumption that a credit is intended: May on Insurance, pages 433–4, sec. 360. The same rule would apply in the case of a cancellation or rescission.

There is no error in the record for which the judgment should be reversed. The report of the Referees will be set aside, and the judgment affirmed.